IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEENAN K. COFIELD | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. CCB-16-3037 |
| LARRY HOGAN | * | |
| STATE OF MARYLAND | | |
| STEPHEN MOYER | * | |
| COMMISSIONER WEBB | | |
| BRIAN FROSH | * | |
| KATHLEEN GREEN | | |
| D. WEBSTER | * | |
| LT. GUNTER | | |
| MAJOR BENSON | * | |
| DOC COMMISSIONER J. MICHAEL STOUFFER | * | |
| SGT. MORGAN | | |
| ECI AND ECI ANNEX CASE MANAGEMENT OFFICIALS | * | |
| SGT. HUTSON | * | |
| SGT. BROWN | | |
| CAPT. FONTE | * | |
| C. KEVIN COMBS | | |
| DETECTIVE PEPPER | * | |
| SGT. PAM TROWER | | |
| JOHN AND JANE DOE | * | |
| Defendants, | | |
| ***** | | |

## **MEMORANDUM**

Pending is an unopposed[1] motion to dismiss or, in the alternative, motion for summary judgment, filed by defendants.[2] ECF No. 23. The motion is supported by a Memorandum (ECF

---

[1] Cofield was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that failure to file a response in opposition to defendants' motion could result in dismissal of the complaint. ECF No. 25. Despite being provided additional time to file any opposition response, ECF No. 28, Cofield has filed nothing in opposition to the motion. Within the body of his motion for order on his motion for notice of publication, ECF No. 29, Cofield claims that he is unable to adequately respond to defendants' motion for summary judgment and invokes Rule 56(d), claiming that he needs additional time to "bring the other

No. 23-1) (collectively, the "Motion") and exhibits in the form of a declaration and records. ECF No. 23-3—23-7.[3] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons to follow, defendants' motion to dismiss or, in the alternative, motion for summary judgment, shall be granted.

## I. BACKGROUND

### A. Cofield's Complaint

Keenan K. Cofield, a former state inmate, filed the instant 42 U.S.C. § 1983 complaint alleging that on or about April 14, 2015, defendants Webster, Green, and Gunter knowingly, purposely, and negligently conspired to violate the "RICO Act" by subjecting him to false arrest, imprisonment, and malicious prosecution for almost eight months when they ordered him confined on administrative segregation at the Eastern Correctional Institution (ECI) without due process or a "meaningful" hearing, causing him to be moved from general inmate population in the Wicomico Unit of the ECI-Annex. Cofield additionally complains that an internal memorandum was sent to case management to remove him from his institutional job, thus causing him to lose his monthly salary and possible diminution work credits. He alleges that although he filed several administrative complaints to ECI administrators and State officials, it

---

defendants and/or require the State to represent those defendants properly named." ECF No. 29, p. 2-3. Review of the Public Access to Courts Electronic Records (PACER) service reveals that Cofield has filed over 160 cases in the federal courts, approximately 40 of them in this district. Given his extensive litigation history in the courts, he has failed to show why he is unable to craft opposing affidavits or present opposition materials.

[2] All defendants have been served with the exception of defendants Combs, Pepper, Trower, and John and Jane Doe. Cofield has on two occasions sought to effect service on Trower and John and Jane Doe, through "notice of publication" requests. ECF Nos. 15, 27. He has filed a motion seeking action on his prior requests. ECF No. 29. The motions shall be denied.

[3] All references to docket entries reflect their electronic pagination.

took almost eight months to release him from administrative segregation. ECF No. 1, pp. 2-7. Cofield claims that when he was released from segregation to general population he was not restored to his prior job status, and was not credited with diminution credits or back wages. *Id*., p. 10.

Cofield further contends that he is a chronic asthmatic patient and, as a fan was missing from his administrative segregation cell, he was subject to temperatures that exceeded 115 to 120 degrees in his cell. He claims that defendants refused to provide him a fan or anything to deal with the excessive heat. Cofield claims that defendants' actions were taken in retaliation for his filing administrative remedy procedure (ARP) grievances and complaints against staff. He further levels allegations that he was forced to perform personal jobs for prison staff in order to continue his job as a clerk and makes salacious allegations against ECI staff. ECF No. 1, pp.8-9 & 32. He argues that this conduct violates the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. *Id*., p. 10.

In Count II of the complaint, Cofield claims that upon his transfer to segregation, his property was confiscated, including nine boxes of legal material, educational and legal compact discs (CDs), and a "host of other property" including a flat screen television, surge protector, cable cords, postage stamps, and a typewriter. He alleges the property was all lost, stolen or intentionally misplaced. He contends that the confiscated property was taken without completion of the necessary personal property inventory process, and the items were only generally referenced on a confiscation form. Cofield states he was forced to send all his active case information home and was "adversely affected and impacted" by not being in possession of his active legal material and lost cases as a result. He alleges that his legal CDs, "stamped" by authorities, were taken in violation of prison information bulletins, after defendants learned that

3

he had created hundreds of mobile applications, with an assessed value between one to five billion dollars. He contends that although defendants had agreed to replace the "stolen" legal CDs and to allow him to store and back up the information on the Clerk's computer, they did not comply with their promise. He seeks compensatory damages for the loss of the CDs.[4] *Id.*, pp. 11-17.

In Count III of the complaint Cofield claims that on or about April 14, 2015, Detective Pepper, a Department of Public Safety and Correctional Services (DPSCS) investigator at ECI, knowingly conspired to take his CDs and other personal and legal property, violating state law and DPSCS policy. He complains that defendants ordered ECI Technical Officer Morgan to retrieve, access, remove, and delete his copyrighted work stored on the ECI Wicomico Unit clerk's computer. Cofield claims that defendants crashed the computer and wiped the hard drive clean of all information. ECF No. 1, pp. 18-21.

In Count V Cofield alleges that for a two or more year period he was sexually harassed by his supervisor, Sgt. Pam Trower, while serving as a Clerk.[5] *Id.*, pp. 28-29. Count VI asserts claims that Cofield was called racial epithets and removed from his job in the Clerk's Office on April 7, 2015. He alleges that Caucasian prison staffers complained that he had too much power and filed too many complaints against prison staff and administrators. He alleges that he was almost killed on three separate occasions. *Id.*, p. 30.

---

[4] At one point in the complaint Cofield alleges that parties at the former Maryland Correctional Adjustment Center and the Maryland Reception Diagnostic & Classification Center lost his personal property on or about December 22, 2011. He claims that the property is worth $1,200.00. ECF No. 1, pp. 16. This claim is time-barred and will not be reviewed by the court.

[5] In Count IV, Cofield alleges that defendants violated his rights under the copyright and trademark laws of the United States and several other states. ECF No. 1, p. 22. He attaches pages of rambling and incoherent allegations which appear to have been prepared in another case. *Id.*, pp. 23-27.

Finally, in an "amendment to complaint" Cofield claims that defendants have violated the Maryland Public Information Act by failing to respond to a civil subpoena. He asserts that defendants have not provided him any of the documents requested. *Id*., p. 31. Cofield seeks damages, lost wages, diminution work credits, and other miscellaneous relief. *Id*., pp. 33-38.

**B. Cofield's amended/supplemental complaints**

Cofield seeks to add John and Jane Doe as defendants, claiming that they violated the DPSCS mission statement and Division of Corrections Directives (DCD) based upon their aforementioned conduct. ECF No. 4. He also requests that another count be added to his complaint, alleging that defendant Webster and his property officer mailed several boxes of confiscated materials to his father. Cofield contends that the partial mailing of four of the nine boxes without notice violates prison policy. He states that upon examination, he noticed that his property had been trashed and dumped into the four boxes rendering it a "total loss." He seeks the return of the five boxes of materials, damages, and to have a copy of his files transferred to a flash drive.[6] ECF No. 11.

**C.    Correctional defendants' response**

Defendants argue that on April 14, 2016, Cofield was placed on administrative segregation pending an investigation for his misuse of state property during his work assignment in the Wicomico Housing Unit Clerk's Office.[7] ECF No, 23-3, pp. 5 & 9. According to the

---

[6] In a subsequent filing, construed as a supplemental complaint, Cofield attaches a "press release" which advances the theory that he was subject to a billion dollar theft when his social media and mobile applications, as well as CDs were "stolen at ECI. ECF No. 14.

[7] According to a letter from Assistant Commissioner Wayne Webb, Cofield sought return of information stored on the prison computer. The data generated and stored on the computer became the property of the State of Maryland and was not to be returned to Cofield. ECF No. 23-4.

matter of record, three large boxes were found in a secured locker area. The boxes contained clippings, a large amount of State of Maryland office supplies and paper work belonging to Cofield, the assigned Clerk on the 7 to 3 shift. ECF No, 23-3, pp. 2-4. They assert that as a Clerk, Cofield's job duties were to "create and update inmate pass lists, movement sheets and update inmate rosters." Defendants state that Cofield instead used the computer system to work on his own personal material, which is not permitted.

Defendants maintain that inmates are assigned to segregation for a number of reasons, all of which are in an effort to preserve order and institutional security at ECI. Inmates in segregation are handcuffed, behind the back at all times, during movements. Further, their access to telephone privileges and contact visits are limited. ECF No. 23-5, pp. 5, 8-9. They are, however, permitted out-of-cell recreation five hours a week and have access to weekly laundry services as do general population inmates. Further, segregation inmates may write and receive letters on the same basis as general population inmates. There are no limitations placed on their legal mail, they have access to health care the same as general population inmates, including medication distribution, they receive meal service on a similar basis as general population inmates, with the exception that they are fed in their cells, and have access to legal reference materials, case management, social work, psychology, education, and library services. *Id*., pp. 5-9 & 14-15.

According to defendants, Cofield's administrative segregation status was continuously reviewed by Case Management personnel, but he chose not to participate in these status review meetings. ECF No. 23-3, pp. 5-7. He was removed from administrative segregation on or about October 2, 2015, upon the completion of an investigation. *Id*., p. 8.

## II. STANDARD OF REVIEW

### Motion for Summary Judgment

Because defendants have filed and relied on a declaration and exhibits attached to their dispositive motion, their motion shall be treated as a summary judgment motion. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## III. DISCUSSION

### Sovereign Immunity

It is argued that the State of Maryland has not waived its sovereign immunity under the Eleventh Amendment to suit in federal court. Neither a state nor an agency of a state is a "person" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65, 69-71 (1989). Moreover, the State of Maryland is immune from liability under the Eleventh Amendment from a § 1983 suit in federal court without regard to the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 (1984); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted). Consequently, the complaint against the State of Maryland is subject to dismissal.

### Defendants Hogan and Frosh's Culpability

Although named in the caption of the complaint, defendants correctly observe that Cofield raises no factual allegation against either Governor Larry Hogan or Attorney General Brian Frosh in the body of his complaint. Under these circumstances no claim has been stated against Hogan or Frosh. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint against Hogan and Frosh will be dismissed.

### Supervisory Liability

Although named in the caption of the complaint, Cofield levels no claims against Secretary of DPSCS Stephen Moyer and Assistant Commissioner (East Region) Wayne Webb. In order for an individual to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs*, 550 F.2d 926,

928 (4th Cir. 1977) (internal citation omitted). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (internal quotation marks omitted).

Supervisory liability under § 1983 must be supported with evidence: "that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted). Where, as here, Cofield points to no action or inaction on the part of a supervisory defendant that resulted in a constitutional injury, the claims against Secretary Moyer and Assistant Commissioner Webb must be dismissed. Cofield's failure to establish personal participation under § 1983 renders his complaint against Moyer and Webb a nullity. The complaint against them will be dismissed.

### RICO Violations

At the outset of his complaint, Cofield alleges that the remaining defendants violated the Racketeer Influenced and Corrupt Organization Act (RICO).[8] Plaintiff's civil RICO claim fails because the complaint does not properly allege the elements of a RICO violation. A plaintiff

---

[8] *See* 18 U.S.C. § 1964(a)

9

seeking civil damages under RICO must allege and prove four elements: "(1) conduct [causing injury to business or property], (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985). Because Cofield alleges only personal injuries, RICO is not available to him. Furthermore, a RICO claim may not be based on allegations of civil rights violations. *See Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997). Cofield has failed to establish a RICO violation.

## Copyright Infringement

Cofield alleges that defendants infringed on his copyrighted materials. To establish a prima facie claim of direct infringement under the Copyright Act, 17 U.S.C. 101, *et seq*., two elements must be demonstrated: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc*., 499 U.S. 340, 361 (1991).

Cofield presents conclusory statements to maintain this claim. He surmises that ECI staff copied his protected material on his CDS after they were confiscated. He produces no supporting facts to establish a violation of copyright infringement laws.

## Assignment to Administrative Segregation

Cofield claims he remained on administrative segregation for eight months, violating his due process rights. Defendants state that he was assigned to administrative segregation pending an investigation into his alleged misuse of state property during his prison job assignment.

Prisoners have a liberty interest in avoiding confinement conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . fact

specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502, 503 (4th Cir. 1997). "*Wilkinson* does not hold that harsh or atypical prison conditions in and of themselves provide the basis of a liberty interest giving rise to Due Process protection." *Prieto v. Clarke*, 780 F.3d 245, 250 (4th Cir. 2015). Rather, there must exist an interest in avoiding "erroneous placement [in the challenged confinement] under the state's classification regulations *combined with* . . . harsh and atypical conditions" for Due Process protections to apply. *Id.* (emphasis in original).

"[G]eneral population is the baseline for atypicality for inmates who are sentenced to confinement in the general prison population and have been transferred to security detention while serving their sentence." *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015). Where, as in *Beverati v. Smith*, 120 F.3d 500 (4th Cir. 1997), conditions in segregated confinement are "similar in most respects to those experienced by inmates in the general population" no liberty interest exists in avoiding that segregation assignment. *Beverati*, 120 F.3d at 503. "[S]tate law mandates [regarding] the confinement conditions to be imposed on offenders convicted of a certain crime and receiving a certain sentence . . . are, by definition, the ordinary incidents of prison life for such offenders." *Id.* (internal quotation marks omitted). Harsh and atypical condition at a prison do not, in and of themselves, give rise to a due process liberty interest in their avoidance. *Id.* at 251.

Defendants acknowledge Cofield's placement on administrative segregation in April of 2015, pending an investigation into his allege misuse of state property while a prison clerk. They document that his administrative segregation assignment was periodically reviewed by classification management personnel in April, July, and September of 2015, but Cofield decided not to participate in the status review meetings. He was removed from administrative segregation upon completion of the investigation.

Cofield has failed to demonstrate that the conditions of his confinement on ECI administrative segregation were more onerous than his prior housing on ECI general population. He has failed to show that he did not receive the rights and privileges he was entitled to under relevant policies. This would include five hours of recreation, meals (in his cell), access to medical care, showers, legal reference materials, and case management, psychology, and education services. He has not met his burden to establish that he was subject to atypical conditions of confinement so as to trigger due process protections.

### Retaliation

Cofield alleges that he was assigned to administrative segregation in reprisal for his filing ARPs and complaints against ECI staff. Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. *See Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). An inmate must allege facts showing that his exercise of a constitutionally protected right caused the retaliatory action or that the retaliatory act itself violated a constitutional right. *See, e.g.*, *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Id.* at 1317.

Cofield furnishes no factual support for this claim. The record presented to the court by defendants, although minimal, refutes his allegation and shows that there was a proffered rational basis for his placement on administrative segregation pending an investigation into his alleged misuse of prison property for his own personal use, while an ECI Clerk. Further, Cofield's bare and conclusory assertion of retaliation is readily distinguishable from the assertions in *Booker v. South Carolina Department of Corrections*, 855 F.3d 533 (4th Cir. 2017). In *Booker*, the United States Court of Appeals for the Fourth Circuit ruled an inmate's "detailed factual allegations"

12

concerning disciplinary charges brought against him after he threatened suit against a mailroom supervisor for tampering with his mail constituted a colorable retaliation claim. *Id*. at 536, 540. Cofield's claim is raised in conclusory terms and he has failed to show that his filing of ARPs and complaints was the motivating factor for his assignment to administrative segregation, his claim is subject to dismissal. *See Wagner v. Wheeler,* 13 F.3d 86, 90 (4th Cir. 1993) (internal citation omitted) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action").

### Access to Courts

Cofield contends that boxes of his legal materials were confiscated and his inability to access them encumbered his access to the courts, causing him to "lose cases." Cofield's legal property claims are subject to summary judgment in favor of defendants on the facts. Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). The Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmates right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). According to the *Lewis* opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

Cofield has failed to show that his lack of access to the materials in question caused him actual harm. He references no specific cases to demonstrate that he was unable to proceed with them or that they were negatively affected due to his lack of materials. Because he has not

13

identified with any specificity an actual injury occurring as a result of the alleged confiscation of his materials, his conclusory allegation that his lack of access to the materials caused him to "lose cases," is insufficient to support his access-to-courts claim.

## Loss of Property

Cofield claims that some of the defendants (Webster, Gunter and Morgan) confiscated, lost, and destroyed his legal and personal property while confined at ECI in violation of his constitutional rights and prison policies.

Insofar as Cofield is claiming that his property was destroyed or lost, no due process violation has been demonstrated due to his access to an adequate post-deprivation remedy. *See Parratt v. Taylor,* 451 U.S. 527, 542–44 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy. *See Juncker v. Tinney,* 549 F. Supp. 574, 579 (D. Md. 1982). The Supreme Court extended its *Parratt* holding to intentional deprivations of property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

## Conditions of Confinement

Cofield states that the conditions of his term on administrative segregation were unconstitutional because at times he experienced cell temperatures exceeding 115-120 degrees and was refused a fan or anything to ameliorate the heat. He maintains that he has chronic asthma.

A prisoner may set out a conditions of confinement claim by showing "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the first element of an Eighth Amendment claim. *See*

*Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler*, 989 F.2d at 1380-81, or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions, *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner. *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981). Allegations that prison conditions "involve the wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime," or are "without any penological purpose" fall squarely within the ambit of the Eighth Amendment. *Id*. at 347. The Eighth Amendment requires a court to examine whether prison conditions impose cruel and unusual punishment.

Cofield fails to present any medical evidence or declaration showing that he suffered a real and actual injury from being subjected to the alleged excessive heat. Further, assuming arguendo, that Cofield suffered from chronic asthma, he has failed to demonstrate that the condition was exacerbated by the heat and lack of a fan. While the alleged extreme heat may have been uncomfortable, that alone cannot support a finding that Cofield was subjected to cruel and unusual punishment. *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

### Loss of Job

Cofield claims that he lost his clerk position, wages, and the ability to earn diminution work credits when he was placed on administrative segregation. He seeks compensation for his lost wages and credits. Cofield's protestations to the contrary, he was not "employed" by the State of Maryland. He was assigned to a position as a prison clerk with duties involving the

15

creation of administrative paperwork (inmate pass lists, movement sheets, and updated inmate rosters).

Prisoners do not have a constitutionally protected right to work while detained or incarcerated or to remain in a particular job assignment once assigned. *Ward v. Moyer*, 2016 WL 393861, at *9 n.8 (D. Md. 2016) (internal citations omitted); *Blankumsee v. Galley*, 2016 WL 270073 at *7 (D. Md. 2016) (internal citation omitted). Further, the lack of an opportunity to earn or apply diminution credits is not an atypical and significant hardship implicating due process protections. *See Meachum v. Fano*, 427 U.S. 215, 225-26 (1976).

An inmate's assignment to or removal from an institutional job in not an atypical event, but represents a commonplace occurrence in the day-to-day operations of a prison. The fact that Cofield lost his position as a clerk, along with the ability to earn wages and diminution credits, cannot be said to impose a significant hardship on Cofield. Therefore, his due process claim regarding the loss of the prison employment opportunities is without merit.

### Verbal and Sexual Harassment

Cofield claims that he was subject to verbal harassment by correctional staff. "[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester,* 52 F.3d 73, 75 (4th Cir. 1995). Mere verbal abuse and taunting inmates by guards, including aggravating language, does not state a constitutional claim. *See McBride v. Deer,* 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (stating "acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983"); *see also Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir.1978) (holding that a prisoner verbally threatened with death may support a § 1983 claim when the

threat is used to restrict access to the courts). Consequently, Cofield's allegations that ECI correctional staff verbally harassed him by using racial epithets are not enough to state a § 1983 claim. Such a claim only accrues when the threats or threatening conduct result in a constitutional deprivation. *See Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983).

Cofield further alleges that while working as a clerk his boss subjected him to "sexual harassment" when she frequently touched him. But Cofield offers no evidence to support his claim. Even assuming his allegations are true, there is no showing, much less any allegation, that defendants were aware of such behavior and failed to take curative action. Further the supervisor's alleged touching, albeit unwanted, does not comprise the type of force required to violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (holding "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action . . . .The Eighth Amendment's prohibition of 'cruel and unusual punishment' necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind) (internal quotation marks omitted).

## Conspiracy

To sustain a civil conspiracy claim under 42 U.S.C. § 1983, a plaintiff must present evidence that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). "[The plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective" and the "evidence must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *See id.* at 421. To establish a cause of action under 42 U.S.C. §

1985(3), the subsection most relevant to Mr. Cofield's conclusory allegations, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; (3) an act in furtherance of the conspiracy;" and](4) injury to plaintiff's "person or property or depriv[ation] of a right or privilege of a citizen of the United States." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). "The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* at 296 (internal quotation marks omitted).

Cofield has failed to allege any evidence of an agreement to deprive him of his constitutional rights that could sustain a civil conspiracy claim under § 1983, and has failed to adequately allege facts which would support his legal assertion that defendants' conduct constituted a conspiracy under § 1985.[9]

## IV. CONCLUSION

For the foregoing reasons defendants' motion to dismiss or, in the alternative, motion for summary judgment will be GRANTED. The complaint against C. Kevin Combs, Detective

---

[9] Cofield also claims that defendants failed to provide him documents pursuant to the Maryland Public Information Act (PIA). Such a claim does not implicate federal law and will not be considered. Title 28 U.S.C. § 1367(a) states, in part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Supplemental jurisdiction, also called pendant jurisdiction, only includes "other claims" related to "claims *in the action"* that convey original jurisdiction. This complaint presents no federal claims to which the state law claim could attach to convey supplemental or pendant jurisdiction. In the absence of establishing a constitutional deprivation, Cofield does not show that this court can exercise supplemental jurisdiction over his claim of negligence and the court declines to exercise its supplemental pendant jurisdiction over any arguable tort or PIA claims.

Pepper, Pam Trower and "John and Jane Doe Defendants" shall be dismissed.  A separate Order follows.


Date:  March 27, 2018	              /s/                       
	Catherine C. Blake
	United States District Judge